AUGUSTUS E. DAWSON AND ANOTHER *vs.* ALFRED D. GOODYEAR.

The plaintiffs endorsed a note at the request and for the accommodation of *D*, which had been made by another person for *D's* accommodation and which was first endorsed by him. At this time there was an understanding among all the parties that *D* was to get the note discounted at a certain bank. He however was not able to accomplish this, and, without the knowledge of the plaintiffs, deposited it with the defendant as security for a loan of less amount, with an agreement that he might redeem it on paying the amount loaned with certain agreed interest. In violation of this agreement the defendant sold the note to a bonâ fide holder for full value, and *D* and the maker being insolvent, the plaintiffs were compelled to pay it. In an action brought by the plaintiffs for damages caused to them by the fraudulent conduct of the defendant in disposing of the note, in which it was found that he disposed of it to prevent *D* from making a set-off of a certain claim which he had against him, it was held—

1. That the understanding between the plaintiffs and *D* that he would get the note discounted at a certain bank, could not, so long as their endorsement was without condition, affect his right to dispose of the note in any other manner.

2. That the defendant, having become the lawful holder of the note, had the right, so far as the plaintiffs were concerned, to dispose of it upon any terms that he pleased.

3. That although in doing so he violated his agreement with *D*, and might therefore be liable to him in damages, yet the plaintiffs, having been subjected to no liability beyond that which they assumed in endorsing the note, namely, that of having the full amount of the note to pay if the maker or *D* did not pay it, were not injured by his act.

ACTION ON THE CASE for damages to the plaintiffs as accommodation endorsers of a promissory note, by fraudulent acts of the defendant in relation to the note; brought to the Court of Common Pleas of New Haven County, and tried to the court, on the general issue, before *Peck, J.* The court made the following finding of facts.

On the 29th of September, 1874, W. A. Grannis, who was a clerk of Sidney H. Dawson, made and delivered to him a note of the following tenor:

"New Haven, Ct., Sept. 29th, 1874. Ninety days after date, for value received, I promise to pay to the order of Sidney H. Dawson, four hundred dollars, at the Union Trust Company. W. A. GRANNIS."

On the same day said Sidney indorsed the same as first indorser, and procured the indorsement of Dawson & Cook, the plaintiffs, who were partners, as second indorsers, and then presented it for discount at the City Bank of New Haven, which was refused. He then applied to Henry J. Potter, who indorsed the same as third indorser, relying on the prior indorsement of the plaintiffs and Sidney, and again presented the note for discount at the same bank, which again refused to discount it.

The note was made and indorsed as aforesaid with the understanding on the part of all the parties thereto that it was to be discounted by Sidney at the City Bank, was without any consideration to the maker or indorsers, and was so made and indorsed for the sole accommodation of Sidney.

Afterwards, on the 29th of September, Sidney applied to the defendant, who loaned him $295, with an agreement between them that it should be deemed a loan of $300, that Sidney should pay the defendant $5 per week for the use of the money, that the latter would hold the note and not dispose of it, and that Sidney might redeem it at any time.

The defendant knew when he took the note that Sidney had expected to get it discounted at the City Bank, and still hoped to do so, and that he expected to redeem it before its maturity, and that it was an accommodation note.

On the 20th of October Sidney paid the defendant $20 as interest on the loan.

Grannis was, when he made the note, and ever since has been, entirely without means to pay or secure it.

Sidney H. Dawson made an assignment in insolvency, under the insolvent laws of the state, on the 7th of November, 1874. The 20th of January, 1875, was limited by the court of probate for the presentation of claims against his estate. His estate was finally settled on the 14th of May, 1875, and paid only eight cents on a dollar upon the claims allowed. On the day of the assignment the defendant called at Sidney's store for interest on the loan and was then informed of the assignment.

The defendant had made sundry other loans at different times to Sidney on largely usurious interest, for each of which he held collateral securities. These he still holds, the claims thereon not having been paid.

A few days after the assignment Henry S. Dawson, the father of Sidney, offered the defendant in behalf of Sidney to repay the loan of $300 and arrears of legal interest thereon, and redeem the note. But the defendant refused, unless he would at the same time redeem all the collaterals and pay interest thereon largely in excess of legal rates. About the first of December, 1874, Augustus H. Dawson, one of the plaintiffs, arranged with the defendant to meet Henry S. Dawson at Dawson & Cook's office, for the purpose of redeeming all the securities. The defendant came before the time appointed and before the arrival of Henry S. Dawson, and refused to wait or come again. About noon on the day the note came due Henry S. Dawson called on the defendant and offered to repay the loan and redeem the note, which the defendant again refused. The defendant then told him that he had sold the note. He had in fact sold the note on the 26th of December, 1874, to E. G. Stoddard, for $390. He

had given no notice of his intention to sell it and had made no demand for the principal of the loan.

Stoddard bought the note in good faith, and when due caused it to be duly presented, and notice of dishonor to be given to the maker and each of the indorsers, and immediately commenced suit thereon against Potter, the last endorser, attaching his goods, and obtaining judgment thereon before the City Court of New Haven on the 12th of February, 1875, for $404.50 debt and $19.48 costs of suit, which Potter paid to the defendant on the 15th of February.

The plaintiffs were immediately informed of the attachment, and the legal costs already incurred when they had notice were $6.42. Being threatened with suit by Potter they paid him $423.98, the amount of the judgment, on the 17th of February, 1875, and brought this suit. No part of the amount paid has been repaid to the plaintiffs.

The plaintiffs claimed that, the note being held as a pledge, the defendant had no right to sell it, that he did so in order to realize more than he would have been entitled to recover on it if he had held it, and that if he had allowed it to be taken up by Henry S. Dawson, Potter and the plaintiffs would have been required to pay nothing, and that the sale was a fraudulent conversion of the note by the defendant; which claims were found by the court to be sustained by the facts.

The plaintiffs further claimed that they were entitled to recover with costs all that they had paid to Potter; or the face of the note with the costs accrued when they had notice of suit; or the face of the note; or at least the difference between the face of the note and the amount of the defendant's loan; which claims were severally overruled by the court.

The defendant claimed that the facts constituted no ground of action in favor of the plaintiffs, for the reason that the injury, if any, was too remote, and that the right of action, if any, was in Sidney H. Dawson or his assignee in insolvency; which claims were sustained by the court, and judgment rendered for the defendant.

The plaintiffs filed a motion in error, and brought the record before this court.

*H. E. Pardee*, for the plaintiffs.

1. The most that the defendant can claim for himself is that he held the note in question as pledgee. The finding so declares. His rights were therefore no more than this—to hold the note as collateral security, and, if not redeemed before maturity, to present it for payment and to collect it. *White* v. *Webb*, 15 Conn., 302. The law is well settled that the pledgee has no right to sell the pledge, at least until after he has demanded payment of the debt and given notice of his intention to sell and of the time and place of sale, and that then the sale must be at public auction. Here there was nothing of the sort. In case of a note he had no right to sell at all. Story on Bailment, §§ 308, 317, 322, 323. He could have recovered on this note no more than the amount actually advanced and legal interest. 1 Parsons on Cont., 253, 380. He had no right to tack on other claims as a condition of redemption. *Jarvis* v. *Rogers*, 15 Mass., 389. He had no right to refuse an offer of principal and legal interest. *Brownell* v. *Hawkins*, 4 Barb., 491; *Spoor* v. *Holland*, 8 Wend., 445. His refusal destroyed his lien and subjected him to an action by the owner for conversion. *A fortiori*, his sale of it destroyed his rights in it. Story on Bailm., §§ 341, 364; 2 Parsons Notes & Bills, 30, 62, 241; *Whitaker* v. *Sumner*, 20 Pick., 399. The foregoing are limitations of his rights if a *bonâ fide* holder; but he was not. His contract was extortionate and oppressive, and ought to be deemed void on general principles. 2 Parsons on Cont., 253, 254 and note. He knew that the note was accommodation paper, and that the pledge to him was one S. H. Dawson had no right to make, and was a misappropriation of the note. The defendant has done us as much wrong as if he had found the note or stolen it and put it into circulation. 2 Parsons on Notes & Bills, 27; 1 Chitty on Bills, 130; *Brown* v. *Taber*, 5 Wend., 566.

2. The defendant is estopped to deny that Stoddard was a *bonâ fide* holder; and the judgment in his favor and the finding in this case established the fact. As such he could recover the full amount of Potter or us, and we were liable

over to Potter. Story on Bailm., § 322; Chitty on Bills, 199; 1 Parsons Notes & Bills, 279; 2 id., 28; *Kirschner* v. *Conklin,* 40 Conn., 77. We had no opportunity to pay until the claim amounted to $406. We had a right to resist payment, through Potter, under the circumstances, and were bound to make good to him the amount of the judgment—the same amount as if we had been sued by Stoddard. *Humphrey* v. *Case,* 8 Conn., 101; *Hale* v. *Hale,* id., 336; *White* v. *Webb,* 15 id., 301.

3. The maker and first endorser being at the time bankrupt, the loss to us was inevitable. If the defendant had retained the note or had accepted the offer made on behalf of S. H. Dawson, we should have had to pay nothing. If, in any sense, he could be said to have a right, as against us, it was only to $295, and we are entitled to the rest; but he had no such right.

4. It is no defense to say that S. H. Dawson had a right of action; a right of action is with the real party injured. His interest was merely nominal. The money all belonged to us. 2 Parsons Notes & Bills, 28; *Ex parte Frere,* Mont. & Mac., 263. But the defendant says it is no injury because we only do what we promised. We answer that we never promised him anything. Our promise was conditional, and only to a *bonâ fide* holder. His defense would be equally applicable if he had found or stolen the note and put it into circulation. He has made a no less fraudulent use of our names than if he had forged the signature. 1 Parsons Notes & Bills, 279; 2 id., 265; Chitty on Bills, 148. The damage is not too remote. It is the necessary and contemplated result of the defendant's act. A court of equity would have enjoined him against it. Chitty on Bills, 110. If he and the other parties to the bill had got our money in this way by conspiracy, they would have been jointly and severally liable. 2 Parsons Notes & Bills, 265; *Scott* v. *Shepherd,* 3 Wils., 403; *Cranch* v. *White,* 1 Bing. N. C., 414; *Fancourt* v. *Ball,* id., 681; *Bleaden* v. *Charles,* 7 id., 246; *Knight* v. *Legh,* 4 Bing., 589; *Yates* v. *Joyce,* 11 Johns., 136; *Decker* v. *Mathews,* 12 N. York, 313; *Camp* v. *Tompkins,* 9 Conn., 545, 555;

Dawson *v.* Goodyear.

*Sanford* v. *Nichols*, 14 id., 324, 327 ; *McNary* v. *Chamberlain*, 34 id., 384; *Gregory* v. *Brooks*, 35 id., 446.

*H. Stoddard*, for the defendant.

1. The only right that the defendant has violated is a right that S. H. Dawson had by virtue of his contract with the defendant. In this contract the plaintiffs had no interest.

2. But the plaintiffs have not been damaged; they have paid precisely what they promised by their endorsement to pay, and they have been subjected to just the extent that they understood they were to be when they endorsed the note. The finding is that "the note was made and endorsed with the understanding on the part of all the parties thereto that it was to be discounted by S. H. Dawson at the City Bank." Therefore, assuming the act of the defendant to be illegal, the plaintiffs have not suffered from it in any respect.

PARDEE, J. The court finds that when the plaintiffs indorsed the note at the request and for the accommodation of Sidney H. Dawson, there was an understanding between all the parties thereto that he would get it discounted at the City Bank; that he was unable to effect this purpose; and that upon his request the defendant discounted it. This understanding was no more than a hope, or an expectation; it was not such a contract as would limit Dawson to that single mode of obtaining money upon the note. The plaintiffs did not make their indorsement dependent upon any condition; his right to deal with it in such manner as would best promote his interests was complete and absolute, and he transferred it to the defendant free from any conditions which would destroy or limit its negotiability. There was no misappropriation on the part of Dawson. The defendant, being thus in possession of the note upon a valuable consideration, had the right, so far forth as the plaintiffs were concerned, to sell it upon terms and conditions satisfactory to himself. By his act of purchase he had come into no contract relation with them by which he was in any degree hampered in the use of their indorsement; their liability upon that was measured and fixed by

the law; it extended to the payment of the full amount expressed in the note upon the happening of certain events, all of which were beyond their control. The defendant could do nothing by which that liability could be enlarged; they could do nothing by which it could be lessened without the consent of the holders. This they understood. They expected the bank to hold it, and themselves to stand as the first persons to whom the bank would resort for payment upon default of the maker, and it is difficult to see that the defendant has added anything to the burden which they intentionally assumed.

It is found that the defendant violated the agreement which he made with Sidney H. Dawson as to the manner in which he would deal with the note. This being so, Dawson has a cause of action against him and can recover damages. But the plaintiffs are in no legal sense parties to or interested in that contract; by no fair or reasonable interpretation of it can we say that either Dawson or the defendant intended to include them within its scope; they could suffer no injury, and were not entitled to receive any benefit from it. If the defendant had agreed to surrender the note to Dawson for fifty dollars, and had thereafter in violation of his agreement sold it to a bonâ fide purchaser who compelled the plaintiffs to pay the full amount, they would have had no cause of action against the defendant upon his broken promise; neither by act of the parties nor by operation of law have they succeeded to any portion of the rights of Dawson in this contract; and it is of the essence of the idea of negotiability that the defendant could enter into this contract for the purchase of the note without assuming any liability thereon to these plaintiffs as prior indorsers. It is also found that the defendant sold the note to a bonâ fide holder for the purpose of preventing Dawson from enforcing certain rights of set-off. This, so far forth as the plaintiffs are concerned, he had a right to do; they had authorized him to sell their negotiable contract for the highest price their names would command in the market; he was under no legal obligation to consult their interests in preference to his own; nor was he bound to protect Dawson

from insolvency because they had indorsed a note for his accommodation. The law does not undertake to redress all injuries; if the defendant, being largely indebted to Dawson had neglected to pay that indebtedness and by reason of such neglect Dawson became unable to take up the note and the amount was thereby lost to the plaintiffs, no one could claim that they would have had any cause of action against the defendant for not paying his debt to Dawson; and yet the connection between cause and effect can be traced with directness. The web of business transactions is so complicated that the effect of a broken contract usually reaches many individuals; but as a rule, the law declines to follow it beyond the party first and most directly concerned.

And the case furnishes no opportunity for the application of the principle which would make the defendant responsible in damages to the plaintiffs for an injury done to Dawson with a fraudulent or malicious design to injure them through a contract relation with him. For the plaintiffs simply undertook to pay the amount of the note to the person who should be the bonâ fide holder of it at maturity, if the maker did not. Out of this there springs no such contract relation between them and Dawson as will transmit to them from him his right of action against the defendant for the violation of his agreement.

There is no error in the judgment.

In this opinion the other judges concurred; except CARPENTER, J., who did not sit.